UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**AFFIDAVIT IN SUPPORT OF APPLICATION
FOR ANTICIPATORY SEARCH WARRANT**

I, Special Agent Deane Jengelley, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent (SA) with the U.S. Drug Enforcement Administration (DEA), and have served in this capacity since graduating from the basic agent training program at the DEA Academy in Quantico, Virginia in October 2017. In January 2018 I was assigned to the Toledo Resident Office located in the Northern District of Ohio. Prior to my position with the DEA, I was employed with the Atlanta Police Department as a Police Officer from October 2013 to April 2017. While employed with the Atlanta Police Department I was a member of the Crime Suppression Team and the Criminal Investigations Division Burglary Unit.

2. As a Special Agent with the DEA, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

3. I am currently assigned to the Toledo Resident Office, within the Detroit Field Division of the DEA, where I participate in investigations targeting individuals and organizations involved in drug trafficking offenses in the Northern District of Ohio and elsewhere. At all times during the investigation described herein, I am acting in an official capacity as a Special Agent with the DEA.

4.      I have received specialized training at the DEA Training Academy in Quantico, Virginia, regarding the identification of narcotic controlled substances and the operation of drug trafficking organizations. I have also been involved in the investigation of numerous individuals and organizations involved in the distribution and use of controlled substances. During my employment with the DEA as a Special Agent, I have participated in many aspects of drug investigations including conducting physical and electronic surveillance, phone toll analysis, working as an undercover, executing arrests, interviews of admitted drug traffickers, drug users and informants. I have prepared affidavits in support of numerous search warrants for violations of federal drug laws contained in Title 21, United States Code, and have executed the same.

5.      The information in this Affidavit is based on your Affiant's personal knowledge, information provided by other law enforcement officers and individuals, and the reports and memoranda of other law enforcement officers.  The facts recited in this affidavit are presented solely for the purpose of establishing probable cause for issuance of an anticipatory search warrant for the premises commonly referred to as **914 Spruce Street, Fostoria, Ohio 44830** (hereafter, **Target Premises**, and more fully described below and in Attachment A).  As such, the affidavit does not set out every fact known in the investigation, but rather seeks only to summarize relevant information in support of the requested warrant.

## **AFFIANT'S KNOWLEDGE**

6.      Based upon my training and experience and discussions with other agents and law enforcement officers concerning the distribution of controlled substances, I am aware of the following;

    a.     Drug trafficking on a scale described herein is an economic crime conducted for profit. Large-scale narcotics traffickers often maintain, on hand, large amounts of United States currency in order to maintain and finance their ongoing drug business.

 b. Persons engaged in drug trafficking commonly conceal controlled substances, currency, financial instruments, precious metals, jewelry, titles to automobiles, and other items of value in their residences, businesses, and automobiles.

 c. That when drug traffickers amass large proceeds from the sale of drugs, they attempt to legitimize profits through various money laundering techniques such as the placing of assets in nominee names, use of legitimate and sham/shell businesses, use of financial institutions, use of wire transmitters, and numerous other techniques. In this regard, drug traffickers often use domestic and foreign banks and/or financial institutions and their attendant services, securities, safe deposit boxes, cashier's checks, drafts, letters of credit, brokerage houses, real estate, "shell" corporations and businesses as "fronts" for their proceeds.

 d. That narcotics traffickers purchase assets with the proceeds of their unlawful activity and often place these assets in nominee names. Oftentimes, drug dealers place these assets in names of relatives, close acquaintances, or business entities to avoid detection and seizure of the assets by government agencies.

 e. That it is essential that members of drug distribution operations maintain contact with one another and use expedited means of communication to facilitate their criminal conduct.  To accomplish this, continued access to telephone and/or electronic mail (E-mail) communications is necessary.  The use of cellular telephones (traditional, pre-paid, and push-to-talk or direct connect) and text messaging and email electronic devices such as computers, tablets, iPads, and smartphones, are crucial to the success of drug traffickers in maintaining timely long-distance and local contacts with suppliers down the organizational chain to local traffickers and/or customers.  These electronic devices, with video/photographic capabilities and vast storage capacity, allow individuals who deal in illegal controlled substances to not only maintain written or electronically stored entries which reflect names, addresses and/or telephone numbers for their current and past associates in drug trafficking (even if said items may be in code) but also many other aspects of criminal activity.

 f. That drug traffickers commonly "front" (provide on consignment) drugs to their customers, and frequently maintain records of same.

 g. That safes and/or concealed compartments are often used as locations to store drugs, currency, assets, and other proceeds and evidence of drug trafficking.

 h. After purchasing controlled substances, traffickers will often transport, or have transported, the controlled substances to areas where they will distribute the controlled substances. Methods of transportation include but are not limited to commercial airlines, private aircraft, boats and ocean going vessels, rental and private automobiles, government and contract mail/parcel carriers.

 i. That it is common for narcotics traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or or the transfer of funds, and other papers relating to the transportation, ordering,

    sale, and, distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them.  Such records also can be stored in electronic computer, tablet and/or smartphone memory media.

    j.    That drug traffickers often take, or cause to be taken, photographs or videos of themselves, their associates, their property and assets, and their product, and these items are usually maintained in their residences.  Such items also can be stored in electronic computer, tablet and smartphone memory media.

    k.    That drug traffickers often keep readily available the paraphernalia for packaging, cutting, weighing, and distributing controlled substances. These items include, but are not limited to scales, plastic bags, and heat sealers.

    l.    That drug traffickers commonly use electronic equipment to aid them in their drug trafficking activities. This equipment includes, but is not limited to, digital display pagers (beepers), cellular telephones, speed dialers, electronic telephone and date books, money counters, fax machines, police scanners and devices such as computers, "tablets," iPad, and smartphones.

    m.    That drug traffickers commonly have in their possession, that is, on their person, at their residences, in their automobiles, and their businesses, firearms and ammunition, among other weapons.  These firearms are used to protect and secure a drug trafficker's person and property.

    n.    That drug smugglers using the United States Mail or other package delivery service often use fictitious names or names of others not closely associated with them so as to conceal their identity.

    o.    It is common for drug traffickers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, the residences of their associates, and residences of family members for ready access and to conceal them from law enforcement.

    p.    Persons engaged in drug trafficking often times conceal in their residences and stash houses: drugs, scales, blenders, baggies, cutting agents, large amounts of cash, money counters, and other items used in preparing, packaging, selling and transporting narcotics.

7.    As noted above, because evidence of drug trafficking and related criminal conduct is often found in electronic computer, tablet and smartphone memory media, your Affiant seeks authority to conduct an off-site forensic analysis (via cellebrite or other similar software application(s)) of any such device(s) found upon the authorized search location in order to review and extract (seize) any communications, documents, records, notes, ledgers, and

photographs in electronic format, or other electronic data relating to the importation, transportation, ordering, purchases and distribution of controlled substances; any records related to the possession, shipment, tracking and delivery of illegal controlled substances; any information relating to the types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions; any data reflecting names, addresses, telephone numbers of associates, to include co-conspirators, sources of drug supply and drug customers; and any bank records, account information, or other electronic financial records relating to the importation, transportation, ordering, purchases and distribution of controlled substances.

## TARGET PREMISES

8.     The **Target Premises,** 914 Spruce Street, Fostoria, Ohio 44830, is located within the city limits of Fostoria, Ohio. The one-family residence is located south of Lynn Street, and north of North Main Street. It is a green one-story single-family home with awning covered parking spots next to the house, with dark colored shingles, consisting of 850 square feet, land parcel # P51010883880000. The front of the residence faces west. The front of the residence has three windows facing the street. Spruce Street is a dead-end street and the Target Premises is the second to last house on the right. The house numbers are clearly affixed to a black mailbox to the right of the front door.

## CRIMINAL INVESTIGATION

9.     On November 23, 2020, while reviewing postal business records, Postal Inspectors identified a U. S. Postal Service Priority Mail Express parcel bearing tracking no. 9405 5118 9956 4113 6971 57, addressed to James Rodriguez, 914 Spruce St, Fostoria, OH 44830 bearing a return address of Mark Rodriguez, 1931 Majella St, Edinburg, TX 78542 (hereinafter "**Subject**

**Parcel**") as a suspected drug parcel based on several factors including but not limited to origin, method of mailing, and size.

10. The **Subject Parcel** is further described as a U.S. Postal Service Priority mail flat rate shipping box, weighing approximately 5 pounds and 13 ounces. The **Subject Parcel** was mailed on November 23, 2020 from a contract postal unit (CPU) in Mission, Texas 78572.

11. Postal inspectors made inquiries through an open source database, and were not able to associate the name James Rodriguez to 914 Spruce Street, Fostoria, Ohio 44830 nor Mark Rodriguez to 1931 Majella Street, Edinburg, Texas 785452. Your affiant knows based on his training and experience, individuals using the U.S. mail for the purpose of transporting controlled substances will often place fictitious address and/or name information on packages to conceal their true identities from law enforcement should the parcel be seized.

12. On November 30, 2020, the **Subject Parcel** was subjected to "Ciga", a narcotic detection canine handled by Detective Twombly of the Cuyahoga County Sheriff's Department, at the U.S. Postal Inspection Service Cleveland Field Office in a parcel line-up, which contained parcels that do not contain any narcotics. Ciga gave a positive alert on the **Subject Parcel**. According to Detective Twombly, this positive alert meant Ciga detected the odor of an illegal drug emanating from the parcel.

13. Detective Twombly has been State Certified as a Narcotics Canine handler and he and narcotics canine Ciga have worked together since 2013. Detective Twombly and canine Ciga were both certified in November 2020 by the Ohio Peace Officers Training Academy (OPOTA) and the North American Police Work Dog Association (NAPWDA) in December 2019. Detective Twombly and canine Ciga have both completed 80 hours of a state-certified training program at Shallow Creek Kennels in Sharpsville, Pennsylvania under Certified Trainer John

Brannon of the NAAPWDA, a nationally organized police work dog association that provides training for dogs and handlers. During this time, Ciga was trained and certified to alert to the presence of the odors of marijuana, cocaine, heroin, MDEA (methlyenedioxyethlamphamine), methamphetamine ("crystal meth"), and/or their derivatives. Detective Twombly has been trained how to handle a detector K-9 and read his alerts. According to Detective Twombly, Ciga is a reliable K-9 assist unit.

14. On November 30, 2020, Postal Inspector Brandon Holestine authored and affidavit in support of a search warrant for the **Subject Parcel**. On November 30, 2020, United States Magistrate Judge Thomas M. Parker reviewed and signed the affidavit.

15. The search warrant was executed, and a search of the **Subject Parcel** revealed two (2) rectangular shaped objects wrapped in foil, black tape, and clear plastic, weighing approximately 2.165 kilograms. Postal Inspector Brandon Holestine opened both objects and identified a white powdery substance that was pressed into the shape of a rectangle. Postal Inspector Brandon Holestine conducted a standardized field test on the white powdery substance, and it produced positive results for Cocaine.

16. On November 30, 2020, law enforcement officers conducted surveillance and photographed the **Target Premises**. The premise appears to be a green one-story, single family home with covered parking spaces next to the house, with dark colored shingles, as depicted and described in further detail in Attachment A.

17. Database records indicate that the **Subject Parcel**'s USPS tracking information is being actively monitored via a mobile data connection, as follows:

| Source IP/Phone/Email | Date | Time (Central) | Domain/ISP |
|---|---|---|---|
| 2607:fb90:e613:a416:70ae:295b:3c4:bb76 | 11/27/2020 | 03:33:08 | T-MOBILE USA INC. |
| 2607:fb90:e613:a416:70ae:295b:3c4:bb76 | 11/27/2020 | 13:59:21 | T-MOBILE USA INC. |
| 2607:fb90:c293:e14a:867:56de:f7bf:8cc3 | 11/27/2020 | 09:41:42 | T-MOBILE USA INC. |
| 2607:fb90:c293:e14a:867:56de:f7bf:8cc3 | 11/28/2020 | 08:29:00 | T-MOBILE USA INC. |

18. Based on the above evidence, your Affiant believes that an unidentified individual involved with drug trafficking, or a co-conspirator, plans to accept the **Subject Parcel** at the **Target Premises** in furtherance of a criminal enterprise.

## ANTICIPATORY CONDITION

19. Based on the facts detailed in this Affidavit and your Affiant's training and experience, the execution of this warrant is conditioned upon the occurrence of the following condition:

> The entry of the **Subject Parcel** -- USPS Express Mail Parcel 9405 5118 9956 4113 6971 57, addressed to James Rodriguez at 914 Spruce Street, Fostoria, Ohio and bearing a return address of Mark Rodriguez at 1931 Majella Street, Edinburg, Texas 78542 -- into the residence located on the property of the **Target Premises**.

Provided this condition is met, this warrant will be served and executed.

20. Upon this condition being met, there will be probable cause to believe that located in the place described herein, there are fruits, evidence, and instrumentalities of criminal offenses against the United States, namely 21 U.S.C. §§ 841(a)(1), 843, and 846, Possession with the Intent to Distribute Controlled Substances, including Cocaine, Mailing of a Controlled

Substance, and Attempt and Conspiracy to Distribute Controlled Substances, including Cocaine, as more fully described in Attachment B. More specifically, on December 1, 2020, law enforcement plans to conduct a controlled delivery of the **Subject Parcel** as a "sham parcel" without any controlled substances inside to **Target Premises**. The use of sham is due to the dangerous nature of fentanyl and its analogues. Based on your affiant's training and experience, cocaine may sometimes contain traces of Fentanyl. Fentanyl can pose a severe risk to the community and law enforcement as the drug can be 100 times more potent than heroin. Fentanyl can be inhaled or absorbed transdermal through the skin and can cause severe reactions up to and including death. If the package enters the **Target Premises**, your Affiant believes that further fruits, evidence, and instrumentalities of the distribution of heroin will also be located on the property of **Target Premises.**

## ITEMS TO BE SEIZED

21.     See Attachment B.

## REQUESTED AUTHORITY

22.     Your Affiant, along with other members of the Drug Enforcement Agency, and officers from various State and Local police departments, and The United States Postal Inspection Service, wish to attempt a controlled delivery of the package to **Target Premises**. All of the controlled substances will be removed from the parcel as a safety precaution and a non-controlled sham substance will be contained within the parcel. An undercover (UC) Postal Inspector, posing as a USPS Letter Carrier will attempt to contact the recipient listed on the address label (purportedly Anthony James Rodriguez), and deliver the parcel to the **Target Premises**. If the parcel is accepted and transported within this location for any reason whatsoever, the requested search warrant will be executed. If the parcel is not transported into

the residence, the requested search warrant will not be executed.  Because it appears **Target Premises** is a single family home, your Affiant recognizes the requested anticipatory search warrant applies only to the **Target Premises** and its curtilage.

23. In conjunction with the attempted controlled delivery, I also seek authority to place inside the parcel and monitor an electronic transmitter, commonly known as a package alarm.  The transmitter emits a radio signal that is only capable of being received as a tone, and is not capable of transmitting or recording audio conversation or video.  The alarm will alert agents as to the physical location/movement and opening of the parcel.

## **CONCLUSION**

24. Based upon the foregoing, I submit the probable cause to believe that an unidentified individual involved with drug trafficking, or one of his/her co-conspirators and or any other individuals not yet identified, are involved in violations of federal law to include: Title 21, United States Code, Section 843, Mailing of a Controlled Substance, and Title 21, United States Code, Sections 846 & 841(a)(1), Conspiracy and Attempt to Possess with the Intent to Distribute a Controlled Substance. This search warrant will also cover any and all persons, vehicles, items, property, attached or detached garage, storage areas, and electronic communication devices, within the curtilage of the above-described premises.

(space intentionally left blank)

25. Based upon the foregoing, I further submit there is probable cause to believe that upon the premises known as **914 Spruce Street, Fostoria, Ohio 44830** (more fully described in "Attachment A") there is contraband and evidence of the above criminal conduct.

*Deane Jengelley*
_____
SPECIAL AGENT DEANE JENGELLEY
DRUG ENFORCEMENT ADMINISTRATION

Sworn to via telephone on this 30th day of November, 2020,
after submission by reliable electronic means.
Fed.R.Crim.P. 4.1 and 41(d)(3).

*Carmen Henderson*
_____
CARMEN E. HENDERSON
U. S. MAGISTRATE JUDGE